## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

JAHMIR CHRISTOPHER FRANK    :
105 EAST MAIN STREET    :
LEESBURG, FLORIDA 34745    :
    :
        PLAINTIFF,    :
    :  CASE NO. 2:18-CV-992
VS.    :
    :
GOOD SAMARITAN HOSPITAL    :
FOUNDATION OF CINCINNATI,    :
INC.    :  JUDGE _____
C/O DONNA S. NIENABER    :
619 OAK STREET    :
CINCINNATI, OHIO 45206    :
    :  CLASS ACTION ALLEGATIONS AND
AND    :  JURY DEMAND
    :  ENDORSED HEREON
THE GOOD SAMARITAN    :
HOSPITAL OF CINCINNATI, OHIO    :
C/O DONNA S. NIENABER    :
619 OAK STREET    :
CINCINNATI, OHIO 45206    :
    :
AND    :
    :
JOHN DOE PHYSICIANS    :
NUMBERS 1-5    :
NAMES AND ADDRESSES    :
UNKNOWN TO PLAINTIFF    :
    :
AND    :
    :
JOHN DOE CORPORATIONS    :
NUMBERS 1-5    :
NAMES AND ADDRESSES    :
UNKNOWN TO PLAINTIFF    :
    :
AND    :
    :
JOHN DOE EMPLOYEES    :
NUMBERS 1-5    :
NAMES AND ADDRESSES    :
UNKNOWN TO PLAINTIFF    :

```
                                          :
AND                                       :
                                          :
JOHN DOE NURSES                           :
NUMBERS 1-10                              :
NAMES AND ADDRESSES                       :
UNKNOWN TO PLAINTIFF                      :
                                          :
        DEFENDANTS.                       :
```

## MEDICAL MALPRACTICE COMPLAINT WITH CLASS ALLEGATIONS FOR NEGLIGENT DESTRUCTION OF MEDICAL RECORDS

### A.     INTRODUCTION

1. This is an action for medical malpractice.  By reason of the negligence of Defendants Good Samaritan Hospital Foundation, Inc., Good Samaritan Hospital, and John Doe nurses and physicians (hereinafter "The Good Samaritan Defendants") during the delivery of Plaintiff, Jahmir C. Frank, at Good Samaritan Hospital on July 30, 1998, Mr. Frank now suffers from periventricular leukomalacia, a permanent and debilitating brain injury.  The birth records of Mr. Frank were destroyed in 2010, due to the negligence of Defendants Good Samaritan Hospital (hereinafter "GSH") and its contractor, Cintas.  It was not learned until June 22, 2017, that the birth records had been destroyed despite Defendants' actual knowledge of the destruction since 2012. Mr. Frank's family requested the records in 2014. It was not until a previous lawsuit , voluntarily dismissed without prejudice on June 8,2018, was filed in Hamilton County, Ohio that Defendants finally admitted Mr. Frank's birth  records had been destroyed due to the negligence of Cintas Corporation No. 2 , a third party hired by Defendants to store and, when lawful, destroy medical records.

### B.     PARTIES

2. Plaintiff, Jahmir Christopher Frank, is a citizen of the State of Florida.

3. Defendant Good Samaritan Hospital is a professional corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio and at all times relevant and material to this action employed physicians, nurses, and other personnel to evaluate, care for and treat patients.

4. Defendant Good Samaritan Hospital Foundation, Inc is an Ohio nonprofit corporation with its principal place of business in Ohio. At all times relevant herein, the acts and omissions performed by employees, servants, or agents of Defendant Good Samaritan Hospital were within the scope of their express, implied or apparent authority as agents of Defendant Good Samaritan Hospital.

5. At all times relevant herein, Defendant John Doe, M.D., was a citizen of the State of Ohio, duly licensed to practice medicine in the State of Ohio, and held himself out as a physician as he received and treated patients for consideration.

6. Plaintiff states that at all times relevant herein, Defendants John Doe Physicians Numbers 1-5 were citizens of Ohio, were duly licensed to practice medicine in the State of Ohio, held themselves out as physicians under the laws of the State of Ohio, or some other state of the United States of America or some foreign jurisdiction, and that said Defendants were conducting, and have regularly conducted, business in the State of Ohio.

7. The true names and capacities of Defendants John Doe Physicians Numbers 1-5 are unknown to Plaintiff at this time, and Plaintiff has, therefore, sued these unknown Defendants under said fictitious names. When the true names and capacities of said John Doe Defendants have been discovered, Plaintiff will seek leave to amend this Complaint accordingly. Plaintiff is informed and believes that Defendants are legally responsible, negligent, or in some other actionable manner, for the events and occurrences hereinafter

described and that said Defendants proximately caused injuries and damages to Jahmir C. Frank.

8. Plaintiff states that Defendant John Doe Corporations Numbers 1-5 are professional corporations, incorporated under the laws of the State of Ohio, which employed physicians, nurses, and other personnel to evaluate, care for, and treat patients of John Doe Corporations Numbers 1-5, including Jahmir C. Frank.

9. The true names and capacities of Defendants John Doe Corporations Numbers 1-5 are unknown to Plaintiff at this time, and Plaintiff has, therefore, sued these unknown Defendants under said fictitious names. When the true names and capacity of said John Doe Corporations Numbers 1-5 have been discovered, Plaintiff will seek leave to amend this Complaint accordingly. Plaintiff is informed and believes that Defendants are legally responsible, negligent, or some other actionable manner, for the events and occurrences hereinafter described and that said Defendants proximately caused injuries and damages to Jahmir C. Frank.

10. The true names and capacities of Defendants John Doe Nurses Numbers 1-10 and/or Employees Numbers 1-5 arc unknown to Plaintiff at this time, however they are all citizens of States other than Florida. Therefore, Plaintiff has sued these unknown Defendants under said fictitious names. When the true names and capacities of said John Doe Nurses Numbers 1-10 and/or Employees Numbers 1-5 have been discovered, Plaintiff will seek leave to amend this Complaint accordingly. Plaintiff is informed and believes that Defendants are legally responsible, negligent, or in some other actionable manner, for the events and occurrences hereinafter described and that said Defendants proximately caused injuries and damages to the Jahmir C. Frank.

4

## C. JURISDICTION

11. Jurisdiction over this action arises under the provisions of 28 U.S.C. §1332 in that the citizenship of Plaintiff is diverse from that of all Defendants and the amount in controversy exclusive of interest and costs exceeds $75,000.00.

## D. VENUE

12. Venue in this action is properly laid in the Southern District of Ohio, Western Division, for the reason all Defendants are residents of the State of Ohio and the Southern District of Ohio. In addition the events and omissions giving rise to this action occurred in the Southern District of Ohio, Western Division..

## E. CLASS ALLEGATIONS

13. Mr. Frank brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class ("Class") and subclass ("Subclass"). The Class Period commenced on January 1, 1997.

14. Mr. Frank brings this action under Federal Rule of Civil Procedure 23(b)(1) on behalf of a class defined as:

> All maternity patients and persons born at Good Samaritan Hospital between January 1, 1997 and December 31, 1999.

15. Mr. Frank also brings this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of a class defined as set for the in Paragraph 6(b) for the reason adjudication of the issues raised here will be dispositive of the claims of all persons affected.

16. Mr. Frank also brings this action under Federal Rule of Civil Procedure 23(b)(3) on behalf of a class defined as set forth in Paragraph 6(b) for the reason questions of law common to the class predominate over the claims of individual class members.

17. The claims of Mr. Frank are typical of the claims of the Class.  Mr. Frank will fairly and adequately protect the interests of the Class .  Mr. Frank has no conflicts with any other Class Member, and has retained competent counsel experienced in class action litigation.

18. Common questions of law and fact exist.  Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members.

19. Class action treatment is a superior method for the fair efficient adjudication of the controversy described herein.  A class action provides an efficient method whereby enforcement of the rights of Mr. Frank and defendants can be fairly managed.

### PLAINTIFF'S FIRST CAUSE OF ACTION

### Medical Malpractice – All Defendants

20. Plaintiff incorporates the proceeding paragraphs as if fully restated herein.

21. Defendant Good Samaritan Hospital, by and through Its employees and/or agents. fell below the accepted standards of care, skill, and diligence for healthcare providers in Ohio and other similar communities in the care and treatment of Jahmir C. Frank. Defendants' failure to meet the accepted standards of care, skill, and diligence includes, but is not limited to causing trauma in utero during Jahmir C. Frank's delivery.

22. Defendant Good Samaritan Hospital by and through its employees and/or agents, breached its duty of reasonable care owed to Jahmir C. Frank and Defendant is liable for the negligent acts and/or omissions of its employees and/or agents. The care and treatment rendered to Jahmir C. Frank by employees, agents, and servants of Defendant

fell below the accepted standards of care for physicians, nurses, and other personnel, and they breached their duties of care owed to Jahmir C. Frank.

23. Defendant Physician John Doe fell below the accepted standards of care, skill, and diligence for physicians and healthcare providers in Ohio and other similar communities in the care and treatment of Jahmir C. Frank. Defendants' failure to meet the accepted standards of care, skill, and diligence includes, but is not limited to causing trauma in utero.

24. Defendants John Doe Physicians Numbers 1-5 fell below the accepted standards of care, skill, and diligence for physicians practicing medicine in Hamilton County, Ohio and other similar communities in the care and treatment of Jahmir C. Frank. Defendants John Doe Physicians' Numbers 1-5 failure to meet the accepted standards of care, skill, and diligence includes, but is not limited to causing trauma in utero.

25. Defendants John Doe Nurses Numbers 1-10 fell below the accepted standards of care, skill, and diligence for nurses in Hamilton County, Ohio and other similar communities in the care and treatment of Jahmir C. Frank. Defendants John Doe Nurses Numbers I-10's failure to meet the accepted standards of care, skill, and diligence includes, but is not limited to causing trauma in utero.

26. Defendants John Doe Employees Numbers 1-5 fell below the accepted standards of care, skill, and diligence for medical provider employees in Hamilton County, Ohio and other similar communities in the care and treatment of Jahmir C. Frank. Defendants John Doe Employees Numbers 1-5's failure to meet the accepted standards of care, skill, and diligence includes, but is not limited to causing trauma in utero.

27. Defendants John Doe Corporations Numbers 1-5, by and through its agents and employees, breached its duty of reasonable care owed to Jahmir C. Frank. Defendants John Doe Corporations Numbers 1-5 are liable for the negligent acts and omissions of its employees. The care and treatment rendered to Jahmir C. Frank by employees, agents, and servants of Defendants John Doe Corporations Numbers 1-5 fell below the accepted standards of care for physicians. nurses, and other personnel and breached their duties of care owed to Jahmir C. Frank as referenced above.

28. As a direct and proximate result of the failure of the Defendants to meet accepted standards of skill, care, and diligence, Jahmir C. Frank suffered severe physical pain, mental anguish, lost earning capacity, extreme emotional distress, and loss of enjoyment, Jahmir C. Frank incurred medical expenses and care expenses.

## PLAINTIFF'S SECOND CAUSE OF ACTION

### Respondeat Superior – Good Samaritan Hospital and John Doe Corps #1-5

29. Plaintiff incorporates the proceeding paragraphs as if fully restated herein.

30. At all times relevant herein. Defendant Good Samaritan Hospital was owned and/or operated by John Doe Corporations Numbers 1-5.

31. At all times relevant herein, Defendants John Doe Physicians Numbers 1-5, John Doe Employees Numbers 1-5, and John Doe Nurses Numbers 1-10 were duly employed by and/or acting on behalf of their employer Defendants Good Samaritan Hospital and/or John Doe Corporations Numbers 1-5.

32. At all times relevant herein, Defendants John Doe Physicians Numbers 1-5, John Doe Employees Numbers 1-5, and John Doe Nurses Numbers 1-10 acted within the

scope of their employment with and/or John Doe Corporations Numbers 1-5 while providing services for Defendants.

33. By virtue of the doctrine of respondeat superior, Defendants Good Samaritan Hospital and/or John Doe Corporations Numbers 1-5 are liable for Jahmir C. Frank's injuries.

34. By virtue of the doctrine of agency by estoppel. Defendants Good Samaritan Hospital and/or John Doe Corporations Numbers 1-5 are liable for Jahmir C. Frank's injuries.

## PLAINTIFF'S THIRD CAUSE OF ACTION

### Negligence

35. Plaintiff incorporates the proceeding paragraphs as if fully restated herein.

36. In June of 2008, Tri Health, Inc. on behalf of Good Samaritan Hospital entered into a document storage and document destruction agreement with Cintas Corporation No. 2.

37. Under the terms of this agreement, Cintas was to store, and when notified destroy, medical records of Good Samaritan patients.

38. At all times Good Samaritan Hospital was subject under the American Medical Association Code of Ethics to a nondelegable duty to manage medical records appropriately.

39. It is a violation of Ohio law for a physician to violate any provision of the Code of Ethics of the American Medical Association. R.C. 4731.22(B)(18).

The American Medical Association Code of Ethics states with respect to "MANAGEMENT OF MEDICAL RECORDS": "PHYSICIANS HAVE AN ETHICAL OBLIGATION TO MANAGE MEDICAL RECORDS APPROPRIATELY."

40. The Code of Medical Ethics Opinion 3.3.1 of the AMA states:

Medical records serve important patient interests for present health care and future needs, as well as insurance, employment, and other purposes.

In keeping with the professional responsibility to safeguard the confidentiality of patients' personal information, physicians have an ethical obligation to manage medical records appropriately.

This obligation encompasses not only managing the records of current patients, but also retaining old records against possible future need, and providing copies or transferring records to a third party as requested by the patient or the patient's authorized representative when the physician leaves a practice, sells his or her practice, retires, or dies.

To manage medical records responsibly, physicians (or the individual responsible for the practice's medical records) should:

(a) Ensure that the practice or institution has and enforces clear policy prohibiting access to patients' medical records by unauthorized staff.

(b) Use medical considerations to determine how long to keep records, retaining information that another physician seeing the patient for the first time could reasonably be expected to need or want to know unless otherwise required by law, including:

Immunization records, which should be kept indefinitely
Records of significant health events or conditions and interventions that could be expected to have a bearing on the patient's future health care needs, such as records of chemotherapy

(c) Make the medical record available:

1.     As requested or authorized by the patient (or the patient's authorized representative)

2.     To the succeeding physician or other authorized person when the physician discontinues his or her practice (whether through departure, sale of the practice, retirement, or death)

10

   3.      As otherwise required by law

   (d) Never refuse to transfer the record on request by the patient or the
   patient's authorized representative, for any reason.

   (e) Charge a reasonable fee (if any) for the cost of transferring the record.

   (f) Appropriately store records not transferred to the patient's current
   physician.

   (g) Notify the patient about how to access the stored record and for how
   long the record will be available.

   (h) Ensure that records that are to be discarded are destroyed to protect
   confidentiality.

AMA Principles of Medical Ethics:  IV, V (emphasis added.)

   41. Defendants have implemented this duty by adopting the following record

retention policy.

   POLICY/PROCEDURE
   Retention:
   TriHeatth will retain the medical records of patients (except maternity arid
   newborn and those under age 11) for a period of ten (10) years. Maternity
   and newborn records will be kept for a period of twenty-one (21) years as
   will records of patients under 11 years of age. Records will be maintained
   in such a manner that their security and integrity are safeguarded, that they
   are reasonably available for authorized users, and that they are retained for
   period of time consistent with the state and federal laws and the standards
   of the health care industry. A patient's medical record may be kept for a
   longer period of time if specifically requested by the patient, the patient's
   physician or attorney, or by the hospital's legal counsel.

   Destruction:
   Declaration of the intent to destroy records will be made public by a notice
   placed in bail newspapers thirty (30) days prior to scheduled destruction
   date. The notice will include instructions to patients on how to request the
   record in writing prior to that date.

   Basic information retained on all records destroyed includes:

         a)      patient name
         b)      medical record number
         c)      dates of admission and discharge

       d)     attending physician

       e)     record of diagnoses and operations

Records will be destroyed by a method which prevents any reconstruction, such as shredding, incineration, or pulping. The use of a commercial record destruction company shall be permitted provided that appropriate guarantees of confidentiality are included in the contractual agreement. Any such contractor shall complete a certificate of destruction which includes the following:

       a)     date of destruction

       b)     method of destruction

       c)     identification of records destroyed

       d)     signature of person supervising the destruction

<u>All certificates of destruction will be maintained indefinitely in a file in the medical record department.</u> Until the lime of destruction, records shall be maintained as hard copy, microfilm, optical disk, or computerized form as best meets the needs of the hospital. After destruction, persons requesting records can be informed that the records have been destroyed.

DATE INFORMATION
Effective Data:      October, 1999
Last Review Date:    July, 1997; September 1999; March, 2002; March, 2004; September, 2007

42. Good Samaritan Hospital has known since April 24, 2012, that the birth records for persons delivered at Good Samaritan during the period 1997-1999, had been destroyed through negligence. Good Samaritan Hospital has not notified former patients of the destruction of these records.

43. Good Samaritan Hospital did not make contact with the patients whose records were affected because of the sheer volume of records that had been destroyed. The exact number of records destroyed is unknown, however, on average Good Samaritan Hospital performs 8,500 to 9,000 deliveries a year.

44. Here this duty was violated because Cintas, the company selected by Good Samaritan Hospital to store their medical records, was not instructed by Good Samaritan

Hospital to separate patient medical records from mom and baby records when the records were given to Cintas by Good Samaritan Hospital.

45. Cintas has no record of any instructions it was given by Good Samaritan Hospital concerning separation of mom and baby records.

46. Under Ohio law an action for medical malpractice must be brought within one year after the cause of action accrues. R.C. §2305.113. In case of a minor, such as Plaintiff, the statute does not begin to run until the minor has reached the age of eighteen R.C. §2305.16. For this reason the AMA ethical duty to retain old records against possible future need, using medical consideration, to determine how long to keep records, creates a duty on physicians in Ohio to keep birth records at least one year following the statute of limitations for the filing of a medical malpractice action and then an additional period to provide for the one time voluntary dismissal and refiling of a malpractice action permitted under Ohio law. Accordingly, Defendants have a duty under Ohio law to retain birth records for at least the length of time of the statute of limitations for medical malpractice claims, 21 years in the case of a minor.

47. Good Samaritan Hospital had a non delgable duty to retain medical records for the period mandated by American Medical Association standards.

48. Good Samaritan Hospital had a non delegable duty to cause Cintas to separate mom and baby records from those of other patients, whose records are not required to be retained for 21 years.

49. Here this duty was violated because Cintas, the company selected by Good Samaritan Hospital to store their medical records, was not instructed by Good Samaritan Hospital to separate patient medical records from mom and baby records when the

records were given to Cintas by Good Samaritan Hospital. Cintas was not properly instructed concerning mandatory disparate treatment of mom and baby records from patient medical records.

50. Good Samaritan Hospital violated its duty to Mr. Frank and thousands of similarly situated persons by failing to:

    a) Retain birth records for the required 21 year period;

    b) Instruct Cintas to separate mom and baby records from other patient records; and

    c) To notify patients of the destruction of mom and baby records for deliveries from 1997-1999.

51. Mr. Frank and others similarly situated have been injured by Good Samaritan Hospital's violation of its duty to retain medical records appropriately, to properly instruct Cintas concerning destruction and separation of records, and to notify patients whose records were destroyed prematurely.

52. By reason of Good Samaritan Hospital's negligence Good Samaritan Hospital is liable to Plaintiff, and members of the putative class, in compensatory damages, punitive damages, interest and attorneys fees.

    **WHEREFORE**, Plaintiff demands the following:

A) Judgment against Defendants, jointly and severally, in such amounts as will fully and adequately compensate Plaintiffs for the damages they have suffered, in an amount to be determined at trial:

B)  Award Plaintiffs punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury for Defendants' failure to advise patients of the destruction of their records and suppressing information about Mr. Frank's records;

C)  Award Plaintiff pre-judgment and post-judgment interest;

D)  Award Plaintiff actual expenses of litigation, including reasonable attorney's fees;

E)  Appoint Plaintiff as class representative;

F)  Appoint Plaintiff's counsel as counsel for the class; and

G)  Award Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*s/Percy Squire, Esq.*
Percy Squire (0022010)
341 S. Third St., Suite 10
Columbus, Ohio 43215
(614) 224-6528 T
(614) 224 -6529 F
psquire@sp-lawfirm.com

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a jury trial in this matter.

*s/Percy Squire, Esq.*
Percy Squire, Esq. (0022010)

15