UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

Jahmir Christopher Frank,

    Plaintiff,

  vs.                                    Case No. 1:18-cv-00618

The Good Samaritan Hospital of Cincinnati, Ohio,        Judge Michael R Barrett

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the Motion of Plaintiff Jahmir C. Frank for Partial Summary Judgment. (Doc. 61). Remaining Defendant The Good Samaritan Hospital of Cincinnati, Ohio[1] has filed a memorandum in opposition.[2] (Doc. 63). Plaintiff did not file a reply. For the reasons that follow, Plaintiff's Motion will be DENIED.

**I.    BACKGROUND**

For purposes of deciding the questions presented, the Court understands the following facts to be uncontested. The parties will recognize that they are largely the same facts that the Court accepted as true for purposes of deciding the Hospital's motion to dismiss Plaintiff's third cause of action for negligence. (*See* 12/09/2019 Order, Doc. 52 at PageID 925–27).

---

[1] The memorandum in opposition actually is filed on behalf of both the Hospital and Defendant Good Samaritan Hospital Foundation of Cincinnati, Inc. Plaintiff has abandoned his claims against the Foundation, however. (*See* Minute Entry dated 11/14/2019). The Court notes that, regarding his remaining medical malpractice claim, Plaintiff also sues John Doe Physicians Numbers 1-5, John Doe Corporations Numbers 1-5, John Doe Employees Numbers 1-5, and John Doe Nurses Numbers 1-5. (*See* Doc. 1 at PageID 1–2 (Caption)).

[2] Although requested by the Hospital, the Court determines that oral argument would not be helpful in resolving the questions presented in Plaintiff's Motion. *See* S.D. Ohio Civ. R. 7.1(b)(2).

1

### A. Plaintiff's State Court Litigation

Plaintiff was born at Good Samaritan Hospital on July 30, 1998. (Doc. 1 at PageID 2 (¶ 1)). He suffers from periventricular leukomalacia ("PVL"), a permanent and debilitating brain injury that he attributes to trauma in utero during his delivery. (*Id.* at PageID 2 (¶ 2), PageID 7 (¶¶ 23–26)). Plaintiff filed suit in the Court of Common Pleas for Hamilton County, Ohio on August 12, 2016—presumably once he turned 18 years old—suing the Hospital for medical malpractice. (*See* Doc. 17-3). Upon learning that his birth records were negligently destroyed by a third party—Cintas[3]—he amended his complaint in state court on November 2, 2017 to add an additional cause of action for "spoliation of evidence." (*See* Doc. 17-4). Specifically, Plaintiff alleged that, following his "improper delivery," the Hospital was "aware that litigation for medical malpractice was probable." (*Id.* at PageID 172). He further alleged that his birth records were "lost or destroyed due to the willful acts of [the Hospital] in not assuring retention of these crucial documents despite actual knowledge that litigation was probable" and that the Hospital's failure to retain the records "was calculated to disrupt" his suit for medical malpractice. (*Id.* at PageID 173 (¶¶ 32, 33)). The Hospital filed a motion for partial summary judgment with respect to this new cause of action, which the state court judge granted on May 16, 2018. (*See* Doc. 17-5). The court found that Plaintiff "failed to provide any evidence showing that: 1) Defendants had any knowledge of pending or probable litigation; 2) Defendants willfully destroyed documents; or 3) that there was willful destruction of evidence designed to disrupt Plaintiff's case." (*Id.*). Not long thereafter, on June 8, 2018, Plaintiff filed a notice of voluntary dismissal without prejudice pursuant to Ohio R. Civ. P. 41(a). (*See* Doc. 17-7).

---

[3] Plaintiff's birth records were negligently destroyed in 2010 by Cintas Corporation No. 2, a contractor hired by the Hospital to store medical records. (Doc. 1 at PageID 2 (¶ 1); Doc. 61-2).

## B. Plaintiff's Federal Court Litigation

Plaintiff filed his "Medical Malpractice Complaint with Class Allegations for Negligent Destruction of Medical Records" here in the Southern District of Ohio on August 31, 2018. (Doc. 1). In it, he set forth three causes of action: medical malpractice, respondeat superior, and negligence. (*Id.*). Specific to his third cause of action, he contended that the Hospital "was subject under the American Medical Association Code of Ethics to a nondelegable duty to manage medical records appropriately." (*Id.* at PageID 9 (¶ 38)). He contended further that it is "a violation of Ohio law for any physician to violate any provision" of said Code of Ethics, citing Ohio Rev. Code § 4731.22(B)(18). (*Id.* (¶ 39)). The "provision" violated, according to Plaintiff, is Opinion 3.3.1, which states that a physician must "retain[ ] old records against possible future need" and to "[u]se medical considerations to determine how long to keep records." (Doc. 1 at PageID 10 (¶ 40)). Plaintiff also quoted from the Hospital's record retention policy, which states that "[m]aternity and newborn records will be kept for a period of twenty-one (21) years[,]" and that all records will be "retained for a period of time consistent with the state and federal laws and the standards of the health care industry." (*Id.* at PageID 11 (¶ 41)).

With this as background, Plaintiff alleged that the Hospital had a duty under Ohio law to retain birth records "for at least the length of time of the statute of limitations for medical malpractice claims, 21 years in the case of a minor." (*Id.* at PageID 13 (¶ 46)). And, because its contractor Cintas "unintentionally" destroyed the records in 2010, when Plaintiff would have been only 12 years old, the Hospital "is liable to Plaintiff, and members of the putative class, in compensatory damages, punitive damages, interest and attorneys fees." (*Id.* at PageID 14 (¶ 52)).

1. **Plaintiff's Third Cause of Action is Dismissed**

This Court granted the Hospital's motion to dismiss Plaintiff's third cause of action on December 9, 2019. (Doc. 52). The analysis was straightforward. The Court noted that Plaintiff's third cause of action specifically alleged *negligent* destruction of medical records, which was fatal to Plaintiff proceeding further. (*Id.* at PageID 928). Ohio clearly recognizes the tort of spoliation of evidence, which, as an essential element, requires proof of *intent.* (*Id.* (citing *McGuire v. Draper, Hollenbaugh and Briscoe Co., L.P.A.*, No. 01CA21, 2002-Ohio-6170, at ¶¶ 75–77, 2002 WL 31521750, at *12 (Ohio App. 4th Dist. Nov. 4, 2002)). But all of Plaintiff's references in his class action complaint were to the Hospital's—or third-party Cintas'— *negligence*. (*Id.* at 929). Dismissal, accordingly, was warranted for failure to state a claim under which relief can be granted under Ohio law. (*Id.* at PageID 930). And because Plaintiff's class action allegations were supported solely by his third cause of action, now dismissed, the undersigned *sua sponte* denied Plaintiff's pending motion for class certification on December 17, 2019. (*See* Doc. 53).[4]

2. **Plaintiff's Pending Motion for Partial Summary Judgment**

As indicated, there is no factual dispute regarding the destruction of the birth records. Plaintiff's birth records, along with all the Mom and Baby charts for the period 1997-1999,[5] were unintentionally destroyed in 2010, because they were housed in the same cartons with adult in-patient charts. (*See* Doc. 61-2 at PageID 1036; Doc. 17-2 at PageID 155). The Hospital

---

[4] At Plaintiff's request, the Court concomitantly directed entry of a final judgment as to his third cause of action pursuant to Fed. R. Civ. P. 54(b). (Doc. 52 at PageID 933–35). Plaintiff's appeal was dismissed for want of prosecution by the Sixth Circuit Court of Appeals on January 24, 2020 (Doc. 59), and his motion to reinstate was later denied on February 27, 2020 (Doc. 62).
[5] On "average" the Hospital performs 8,500 to 9,000 deliveries per year. (Doc. 61-1, Gracey Dep. at PageID 1002 (26:17–24)).

learned in April 2012 that the records had been destroyed. (*Id.*) Plaintiff's stepmother first requested the records on October 29, 2014, when Plaintiff was a minor. (*See* Doc. 61-4 at PageID 1038 (¶¶ 1,7); Doc. 41-1 at PageID 744 (¶¶ 1, 7)). Plaintiff's counsel was notified on January 25, 2017—in the course of the state court litigation—that the records had been destroyed and under what circumstances. (Docs. 61-3, 41-2).

There is also no factual dispute regarding the inaccessibility of the fetal monitoring strips related to Plaintiff's birth. An electronic copy remains, but the Hospital "no longer maintains the proprietary software/technology compatible with the data written on this disk and all efforts to retrieve the data have been unsuccessful as a result." (Doc. 61-5, Greenberg Aff. at PageID 1054 (¶ 5)). Plaintiff contracted with a third-party forensic examiner, SecureData, which ultimately advised, "it is unlikely that these files can be successfully viewed or converted into a modern format." (Doc. 61-6, Buxton Aff. at PageID 1057 (¶ 18)).[6]

Plaintiff offers the opinion testimony of Augustus G. Parker III, M.D., a practicing physician in the field of Obstetrics and Gynecology, who states, "It is not possible to render a standard of care opinion without reviewing either the birth records of the delivery, fetal monitoring strips, or both." (Doc. 61-7, Parker Aff. at PageID 1057 (¶ 1), 1058 (¶ 7)). Hence, given his "total lack of culpability in relation to the destruction of his medical records or the inaccessibility of the fetal monitoring strip optical disc," Plaintiff asks this Court—as a discovery sanction—for partial summary judgment on the issue of liability. That is, Plaintiff asks this Court for judgment as a matter of law that the Hospital violated the applicable standard of care during his birth, causing his brain injury.

---

[6] To date, SecureData retains possession of this electronic copy. (Doc. 63-6).

## II. LEGAL STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see LaPointe v. United Autoworkers Loc. 600*, 8 F.3d 376, 378 (6th Cir. 1993).

The parties, and this Court, are well-familiar with the standard for summary judgment. As previously noted, the material facts at bar—surrounding the destruction of Plaintiff's medical records and the inaccessibility of the electronic copy of his fetal monitoring strips—are not in dispute. What is in dispute is whether these facts merit a sanction of spoliation against the Hospital as to the ultimate issue of liability, leaving only damages to be decided by a jury.

## III. ANALYSIS

The parties agree that federal law governs the issue of spoliation of evidence. *See Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009). They further agree that a spoliation sanction is warranted only when "(1) [ ] the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) [ ] the records were destroyed 'with a culpable state of mind'; and (3) [ ] the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citation and quotation omitted). The party seeking the sanction bears the burden of proof. (*Id.*).

An obligation to preserve evidence may arise "when a party should have known that the evidence may be relevant to future litigation." *Id.* "[B]ut, if there was 'no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case' and intentional destruction." *Id.* at 553–54 (citing *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006)). Here the records were destroyed by contractor Cintas in 2010, nearly 12 years after Plaintiff was born, four years before his stepmother first requested them in 2014, and *six years before* being served with the August 12, 2016 complaint filed in state court. (*See* Doc. 61-1, Gracey Dep. at PageID 1008 (32:10–15) ("Q. Okay. When was the first time the hospital received notice of a potential lawsuit relative to the 1998 delivery and birth of Jahmir Frank? A. When we received the lawsuit in 2016.")). This timeline does *not* suggest an obligation to preserve. *See Ross v. Am. Red Cross*, 567 F. App'x 296, 302–03 (6th Cir. 2014) (obligation element not met when Red Cross lost relevant medical record two months before notice of potential litigation); *see also Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 568–69 (6th Cir. 2015) (obligation element not met when public employer either intentionally destroyed or negligently lost documents some five years prior to receiving notice of potential litigation) (citing *Ross*).

Reminiscent of the facts that underpinned his since-dismissed third cause of action, Plaintiff maintains that the Hospital was under a statutory obligation to adhere to the American Medical Association Code of Ethics, which, in Opinion 3.3.1, states that "physicians have an ethical obligation to manage medical records appropriately." (Doc. 61 at PageID 970–74 (citing Ohio Rev. Code § 4731.22(B)(18)). This argument is unavailing. Section 4731.22(B)(18)[7]

---

[7] That statutory provision reads as follows:

> (B) The [state medical] board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a license or certificate to practice or certificate to recommend,

7

entitles the Ohio State Medical Board to take various actions against a health care provider for failing to adhere to, among others, the American Medical Association Code of Ethics, but it does not create a private right of action. And Plaintiff cites only to an ethics *opinion* that neither requires nor recommends how long medical records should be retained. So, clearly, no ethics violation has occurred. The Hospital points out that Ohio Admin. Code § 3701-83-11(F) requires licensed health care facilities to maintain medical records "for at least six years from the date of discharge[.]"[8] Inasmuch as Plaintiff's birth records were not destroyed until nearly 12 years after his date of discharge, no state regulatory violation has occurred either. And without a regulatory violation, a discovery sanction is not justified. *Henry v. Abbott Laboratories*, No. 2:12-cv-841, 2015 WL 5729344, at *9 (S.D. Ohio Sept. 30, 2015) (acknowledging that a failure to preserve records in violation of a regulation requiring retention can give rise to an inference of spoliation, but finding no such violation), *rev'd on other grounds*, 651 F. App'x 494 (6th Cir. 2016).

Plaintiff also relies, again, on the Hospital's failure to follow its own record retention policy, which states that "[m]aternity and newborn records will be kept for a period of twenty-one (21) years[,]" and that all records will be "retained for a period of time consistent with the state and federal laws and the standards of the health care industry." (Doc. 61 at PageID 970–

---

refuse to issue a license or certificate, refuse to review a license or certificate, refuse to reinstate a license or certificate, or reprimand or place on probation the holder of a license or certificate for one or more of the following reasons:
. . . .
(18) Subject to section 4731.226 of the Revised Code, violation of any provision of a code of ethics of the American medical association, the American osteopathic association, the American podiatric medical association, or any other national professional organizations that the board specifies by rule. . . .
. . . .

Ohio Rev. Code § 4731.22(B)(18). Section 4731.226 allows physicians to render their professional services through corporations, limited liability companies, partnerships, and professional associations.

[8] Also, to prevent fraud, the records of Medicaid-eligible patients must be retained "for a period of at least six years" after a provider has received reimbursement. *See* Ohio Rev. Code § 2913.40(D).

74). Plaintiff ties the period to the length of time necessary to allow a minor to bring a medical malpractice claim arising out of the circumstances of his birth. A suit for medical malpractice must be brought within one year after the cause of action accrues. Ohio Rev. Code § 2305.113(A). In the case of a minor, however, the statute of limitations does not begin to run until the minor has reached the age of 18. *Id.* § 2305.16. The savings statute allows a plaintiff to voluntarily dismiss his suit without prejudice ("if the plaintiff fails otherwise than upon the merits") and then refile "within one year." *Id.* § 2305.19(A). In Plaintiff's mind, this scenario adds up to 21 years.[9] (Doc. 61 at PageID 973–74; Doc. 1 at PageID 13 (¶ 46)).

Plaintiff simply offers argument—and no evidence—that the retention policy was drafted for this purpose. (*See* Doc. 61-1, Gracey Dep. at PageID 988 (12:4–8) ("Q. Okay. And why do you retain birth records for 21 years? A. I don't know the answer to that because the policy was put in place before I started."); 1004 (28:15–19 ("Q. Where does the 21-year standard come from? A. I don't know when the decision was made at the time the policy was developed, why 21 years was selected.")). Regardless, there is no denying that the policy was violated. (*Id.* at PageID 999 (23:11–14 ("[Cintas] failed to follow the contract and our retention period and requirements in our policy, so we [the Hospital] addressed that with them at the time."")). But even if the Court were to find that this violation created a self-imposed obligation to preserve, *see generally Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013),[10] Plaintiff still cannot

---

[9] As the Court already has observed, Plaintiff's count isn't completely accurate vis-à-vis application of the savings statute. (Doc. 52 at PageID 927 n.5). A suit can pend for multiple years before a decision on the merits results from either motion practice or a jury verdict, and Ohio R. Civ. P. 41(A) allows a plaintiff to dismiss without prejudice "at any time before commencement of trial." (*Id.*).

[10] At issue in *Stocker* was whether married taxpayers timely filed an amended tax return. 705 F.3d at 227. The taxpayers sought an adverse inference against the Government because the Internal Revenue Service failed to retain the envelope in which they mailed their return—as required by an internal policy manual—that purportedly would bear a postmark confirming a timely filing. *Id.* at 235. On appeal, and noting no objection by the Government, the Sixth Circuit agreed that this failure gave rise to an obligation to preserve the envelope, and that "the first factor cited in *Beaven* has been established here." *Id.*

prove that the records were destroyed "with a culpable state of mind." *Beaven*, 622 F.3d at 553. What amounts to a dispositive adverse inference should be awarded only when a party "acted with a degree of culpability beyond mere negligence." *Stocker*, 705 F.3d at 236. "[T]he choice of an appropriate sanction should be linked to the degree of culpability, with more severe sanctions reserved for the knowing or intentional destruction of material evidence. Here, the record discloses no culpable conduct beyond the negligent failure to preserve an envelope in accordance with internal agency regulations." *Id.*

Faced with the undisputed fact that third-party Cintas negligently destroyed thousands of Mom and Baby charts only because they were housed in the same cartons with adult in-patient charts, Plaintiff urges the Court to find the Hospital reckless because Cintas "was not instructed by Good Samaritan Hospital to separate patient medical records from mom and baby records when the records were given to Cintas by Good Samaritan Hospital." (Doc. 61 at PageID 973). Indeed, Plaintiff definitively states, "Cintas has no record of any instructions it was given by Good Samaritan Hospital concerning separation of mom and baby records." (*Id.*). Neither statement, however, is supported by citation to the record. Thus, there is no basis upon which the Court can find "culpability beyond mere negligence." *See Stocker*, 705 F.3d at 236.

Finally, although mindful of the medical evidence filed under seal that may undercut Plaintiff's claim that his brain injury was caused at birth (*see* Doc. 45), the Court nonetheless agrees that the birth records destroyed are relevant to Plaintiff's malpractice claim. Yet without establishing an obligation to preserve and a culpable state of mind, Plaintiff is not entitled to a spoliation sanction.

Regarding the fetal monitoring strips, Plaintiff seeks a sanction under Rule 37(e). This route, too, is a dead end.

Fed. R. Civ. P. 37(e) provides as follows:

> **If electronically stored information** that should have been preserved in the anticipation of conduct of litigation **is lost** because a party failed to take reasonable steps to preserve it, **and it cannot be restored** or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) **only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation** may:
>   (A) presume that the lost information was unfavorable to the party;
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>   (C) dismiss the action or enter a default judgment.

(Emphases added). Fatal to Plaintiff's case once again is a lack of "intent." The Hospital attempted to both copy the disk and redact data from it without success. (Doc. 61-5, Greenberg Aff. at PageID 1054 (¶¶ 5, 7)). The Hospital provided the disk to Plaintiff's forensic expert, SecureData, which, after significant effort, was equally unsuccessful. (Doc. 61-6, Buxton Aff.). Here, the inability to access the fetal monitoring strips is a casualty of outdated technology, and nothing more. (*Id.* at PageID 1055 (¶ 3) ("Despite commercial viability in the mid-90s, the media design did not receive many commercial iterations, prompting driver support to also be discarded in future operation systems.")). A sanction under Rule 37(e), therefore, is not warranted either.

IV. **CONCLUSION**

For the reasons set forth above, the Motion of Plaintiff Jahmir C. Frank for Partial Summary Judgment (Doc. 61) is hereby **DENIED**.

**IT IS SO ORDERED.**　　　　　　　　　　/s/ *Michael R. Barrett*
　　　　　　　　　　　　　　　　　　　　Michael R. Barrett, Judge
　　　　　　　　　　　　　　　　　　　　United States District Court