# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

Jahmir Christopher Frank,

        Plaintiff,

    vs.

The Good Samaritan Hospital of Cincinnati, Ohio,

        Defendant.

Case No. 1:18-cv-00618

Judge Michael R Barrett

## ORDER

This matter is before the Court on Plaintiff's Motion to Vacate (pursuant to Fed. R. Civ. P. 60(b)(6)) the September 3, 2021 Opinion and Order (Doc. 106) in which the undersigned: construed Defendant's Motion to Strike Dr. Jennifer Jones Hollings and Dr. Michael Katz as Plaintiff's Expert Witnesses (Doc. 87) as objections to Plaintiff's evidence under Fed. R. Civ. P. 56(c)(2); sustained Defendant's objections; and granted Defendant's Motion for Summary Judgment (Doc. 88) as to Plaintiff's medical malpractice claim.  (Doc. 110, filed 02/22/2023). Defendant has filed a memorandum in opposition (Doc. 111, filed 02/24/2023)), to which Plaintiff has replied (Doc. 113, filed 02/27/2023).[1]

**Background.**  Plaintiff Jahmir Christopher Frank was born at Defendant Good Samaritan Hospital on July 30, 1998.  (Doc. 1 PAGEID 2 (¶ 1)).  Plaintiff suffers from periventricular

---

[1] Plaintiff also requested (pursuant to Fed. R. Civ. P. 6(c)(1)(C)) that the Court require Defendant to respond to his Motion to Vacate within three days and allow him one day to reply.  (*See* Doc. 110 PAGEID 1886).  Because the parties did so on their own volition, this aspect of Plaintiff's motion is **DENIED as moot**.

leukomalacia ("PVL"), a permanent and debilitating brain injury that he attributes to trauma in utero during his delivery. (*Id.* at PAGEID 2 (¶ 2), PAGEID 7 (¶¶ 23–26)).

Under Ohio law, a medical malpractice claim must satisfy four elements. A plaintiff must prove 1) the existence of a duty owed by defendant to plaintiff; 2) a breach of duty by defendant; 3) causation based on probability; and 4) damages. *Galloway v. Fed. Tort Claims Act*, No. 4:17-CV-1314, 2019 WL 3500935, at *3 (N.D. Ohio July 31, 2019) (quoting *Loudin v. Radiology & Imaging Servs., Inc.*, 185 Ohio App. 3d 438, 447, 2009-Ohio-6947, 924 N.E. 2d 433, at ¶ 45 (Ohio App. 9th Dist. 2009) (citing *Stinson v. England*, 69 Ohio St. 3d 451, 455, 1994-Ohio-35, 633 N.E.2d 532 (Ohio 1994))). "Proof of the recognized standards must necessarily be provided through expert testimony." *Bruni v. Tatsumi*, 46 Ohio St. 2d 127, 131–32, 346 N.E.2d 673, 677 (Ohio 1976).

In its summary judgment motion, the Hospital maintained that Plaintiff could not satisfy the second and third elements. Plaintiff countered with the testimony of Dr. Hollings as to the standard of care during labor and delivery and Dr. Katz as to causation. But the Hospital moved to strike Dr. Hollings as an expert witness (and, in turn, Dr. Katz, because Dr. Katz based his opinion on the opinion of Dr. Hollings). Dr. Hollings was not competent to provide an expert medical opinion, the Hospital argued, because she did not satisfy the "active-clinical-practice" requirement set forth in Ohio[2] Evid. R. 601(B)(5)(b).[3]

---

[2] *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise. But **in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision**.") (emphasis added).

[3] Rule 601—titled "General Rule of Competency"—was revised most recently on July 1, 2021. As currently configured and regarding expert testimony, the rule provides:

(B) **Disqualification of witness in general**. A person is disqualified to testify as a witness when the court determines that the person is:

2

When deposed in July 2020, Dr. Hollings was employed as a Physician Clinical Reviewer for Magellan Health Care ("Magellan"), where she had been working since October 2018.  (Doc. 86-1, Hollings Dep. PAGEID 1533 (11:14–25), 1542 (20:10–19); Doc. 76-1, Hollings Curriculum Vitae PAGEID 1389).   Agreeing with the Hospital, the undersigned concluded that her then-current[4] work did not constitute active clinical practice:

> Dr. Hollings's current work for Magellan does not constitute active clinical practice.  **She does not examine or diagnose patients, order tests, or develop treatment plans.  Nor does she supervise physicians who are providing direct patient care.**   Rather, Dr. Hollings "consults" with medical providers for the purpose of either approving or denying payment for testing that the *providers* recommend.  While a financial consideration, the cost of a test—and whether a patient's health insurance will pay for it—is not "adjunctive" to its *therapeutic* value.  Thus, Dr. Hollings's work is

. . . .

(5) A person giving expert testimony on the issue of liability in any medical claim, as defined in R.C. 2305.113, asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person by a physician or podiatrist, unless:

(a) The person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state;

(b) **The person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure**, or to its instruction in an accredited school and

(c) The person practices in the same or a substantially similar specialty as the defendant.  The court shall not permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless the expert shows both that the standards of care and practice in the two specialties are similar and that the expert has substantial familiarity between the specialties.

Ohio Evid. R. 601(B)(5) (text emphasis added).  Its purpose is "to prohibit a physician who makes [her] living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients." *Celmer v. Rodgers*, 114 Ohio St. 3d 221, 226, 2007-Ohio-3697, 871 N.E.2d 557, at ¶ 23 (citing *McCrory v. State*, 67 Ohio St. 2d 99, 103–04, 423 N.E.2d 156 (Ohio 1981)); *Johnson v. Abdullah*, 2019-Ohio-4861, 136 N.E.3d 581, at ¶ 1 (Ohio App. 1st Dist. 2019) ("Evid. R. [(B)(5)(b)] stems from a salutary purpose—preventing 'hired gun' professional witnesses who do not actually treat patients from pontificating on how treating doctors should have performed their jobs in medical malpractice cases."), *aff'd*, 166 Ohio St. 3d 427, 2021-Ohio-3304, 187 N.E.3d 463 (Ohio 2021).

[4] Rule 601's active-clinical-practice requirement is couched in the present tense ("devote<u>s</u>") and, "[g]enerally, an expert witness in a medical malpractice action must meet the requirements of Evid. R. 601[(B)(5)(b)] **at the time the testimony is offered** at trial."  *Celmer v. Rodgers*, 114 Ohio St. 3d 221, 226, 2007-Ohio-3697, 871 N.E.2d 557, at ¶ 27 (Ohio 2007) (emphasis added).

3

> not an "essential link" in the "chain of services" that constitutes the "comprehensive treatment" of patients. *Goldstein* [*v. Kean*], 100 Ohio App. 3d [255,] 257, 461 N.E.2d [1350,] 1353 [Ohio App. 10th Dist. 1983)]. And, even if it were, only twenty (20%) percent of her consultations involve obstetrics and gynecology, far below the required "at least one-half" in her "field of licensure."

(Doc. 106 PAGEID 1868 (italics in original, bold emphasis added)). As such, she was not competent to testify as a standard-of-care expert on Plaintiff's behalf. And because Dr. Katz relied "particularly" on Dr. Hollings for his opinion on causation, it was not "the product of reliable principles and methods[]" and thus warranted exclusion under Fed. R. Evid. 702(c).

In light of these rulings, and with regard to the Hospital's summary judgment motion, the undersigned noted that the only standard-of-care (and causation) evidence properly before the Court was the testimony of the Hospital's experts:

> Because Plaintiff has not produced a competent expert who will offer an admissible opinion at trial that the Hospital breached the applicable standard of care during Plaintiff's delivery—rendering unopposed Dr. Farb's opinion that the standard of care was *not* breached—there is no genuine dispute as to the second element that Plaintiff is required to prove. And because Plaintiff has not produced a competent expert who will offer an admissible opinion at trial that any alleged deviation from the standard of care actually caused Plaintiff's brain injury—rendering unopposed the opinions of Drs. Farb, Bedrick, and Chalhub that Plaintiff's brain injury is *unrelated* to his delivery—there is no genuine dispute as to the third element that Plaintiff is required to prove. **Accordingly, the Hospital is entitled to judgment as a matter of law as to Plaintiff's medical malpractice claim.**

(Doc. 106 PAGEID1879 (emphasis added)). Plaintiff's notice of appeal (Doc. 107) was docketed in the United States Court of Appeals for the Sixth Circuit on September 9, 2021. *Jahmir Christopher Frank v. Good Samaritan Hospital of Cincinnati, OH, et al.*, No. 21-3795 (ECF #1). The Sixth Circuit has set the case for submission to the Court on the briefs of the parties on March 15, 2023. *Id.* (ECF #45).

**The Ohio Supreme Court's decision in *Johnson v. Abdullah*.** The undersigned relied (in part) on the First District Court of Appeals opinion in rendering the Court's decision that Dr. Hollings was not competent to testify under Rule 601. The Ohio Supreme Court has since affirmed the First District, holding that "a physician employed in an executive position who does not directly oversee physicians who treat patients does not satisfy the active-clinical-practice requirement of Evid.R. 601." 166 Ohio St. 3d 427, 2021-Ohio-3304, 187 N.E.3d 463, at ¶ 1 (Ohio 2021). Particularly pertinent here, the Ohio Supreme Court (as a preliminary matter) declined to expand the *Celmer*[5] exception, which it described as "clearly confined to the particular facts of that case." *Id*. at ¶ 20. Instead, it applied the general rule identified in *Celmer* that "the witness must meet the active-clinical-practice requirement of Evid. R. 601 **at the time the testimony is offered** at trial." *Id*. at ¶ 27 (emphasis added).

**Plaintiff's Rule 60(b)(6) Motion to Vacate.** Because Plaintiff has filed a notice of appeal, this Court lacks jurisdiction to grant his Rule 60(b)(6) motion. *Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008) (citing *First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343, 345 n.1 (6th Cir. 1976)); *Adams v. Kijakazi*, No. 7:19-88-KKC, 2022 WL 987337, at *1 (E.D. Ky. Mar. 31, 2022). Even though divested of jurisdiction, however, the district court may "aid the appellate process" by indicating that it would grant the motion if it could. *Pickens*, 549 F.3d at 383 ("Even though the district court is without jurisdiction, it can be involved."). This "indicative ruling procedure" has since been codified (in 2009) in the Rules of Civil Procedure. Fed. R. Civ. P. 62.1(a) allows the district court three options: defer considering the Rule 60(b)(6) motion; deny it; or "state either that it would grant the motion if the court of appeals remands for that purpose

---

[5] *See supra* note 4.

5

or that the motion raises a substantial issue." Although Plaintiff's motion fails to mention Rule 62.1, he clearly asks this Court to advise that it would be inclined to grant his Rule 60(b)(6) motion upon remand. The undersigned will continue, therefore, as if Plaintiff had followed the proper procedure.

"Federal Rule of Civil Procedure 60(b)(6) is a catchall provision that provides relief from a final judgment for any reason justifying relief not captured in the other provisions of Rule 60(b)." *West v. Carpenter*, 790 F.3d 693, 696 (6th Cir. 2015) (citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013)). It applies "only in exceptional or extraordinary circumstances where principles of equity **mandate** relief." *Id.* (citing *McGuire* (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990))). "Relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. This is especially true in an application of subsection (6) of Rule 60(b)," the catchall provision. *Jones v. Bradshaw*, 46 F.4th 459, 482 (6th Cir. 2022).

Plaintiff bases his motion on "clarification" of Ohio R. Evid. 601(B)(5)(b) that the Ohio Commission on the Rules of Practice and Procedure in Ohio Courts has proposed in response to the Ohio Supreme Court's ruling in *Johnson v. Abdullah*.[6] An initial proposal was published on September 12, 2022, with public comment ending October 27, 2022; a revised proposal was published on January 3, 2023, with public comment ending February 17, 2023.[7] As currently drafted, that clarification provides that an expert witness must be in active clinical practice "at

---

[6] The Supreme Court of Ohio & The Ohio Judicial System, Proposed Rule Amendments, Ohio Rules of Civil Procedure (1, 1.1, 4.1, 4.6, 10, 26, 30, 33, 36, 37, 39, 43, 65.1, 73, 75 and Civil Form 20), Criminal Procedure (1, 2, 10, 12, 15, 40, and 43), Evidence (101, 601, and 609), and Juvenile Procedure (1, 2, 8, 27, 34, 35, and 41) (As published for public comment (second round)), at *48–49 (https://www.supremecourt.ohio.gov/RuleAmendments/Default.aspx) (last visited 2/27/2023).

[7] *Id.* at *1.

either the time the negligent act is alleged to have occurred or the date the claim accrued[.]"[8] Plaintiff asserts that his claim accrued on August 12, 2016—the date he filed his medical malpractice claim against the Hospital in the Court of Common Pleas for Hamilton County, Ohio[9]—a point in time when Dr. Hollings was engaged in active clinical practice. (Doc. 110 PAGEID 1889).

The Court is unpersuaded. First, "a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citing *Agostini v. Felton*, 521 U.S. 203, 239 (1997)); *Adams*, 2022 WL 987337, at *2 (quoting *Segrist v. Bank of N.Y. Mellon*, 797 F. App'x 909, 911 (6th Cir. 2019) (citing *Blue Diamond*)). Second, there has been no change in law. There is only a *proposed* change.

The Ohio Supreme Court's decision to authorize proposed amendments for public comment "is neither an endorsement of, nor a declaration of intent to approve the proposed amendments. The purpose of the publication is to invite the judiciary, the practicing bar, and the public at large to provide thoughtful and meaningful feedback on the legal and practical effect of the proposed amendments."[10] The same is true when the court authorizes a second round of publication for public comment.[11] And, "[o]nce the second round of public comments is ended,

---

[8] *Id.* at *49.

[9] On June 8, 2018, Plaintiff filed a notice of voluntary dismissal without prejudice pursuant to Ohio R. Civ. P. 41(a). (*See* Doc. 17-7). This civil action followed on August 31, 2018. (*See* Doc. 1).

[10] The Supreme Court of Ohio & The Ohio Judicial System, Proposed Rule Amendments, Ohio Rules of Civil Procedure (1, 1.1, 4.1, 4.6, 10, 26, 30, 33, 36, 37, 39, 43, 65.1, 73, 75 and Civil Form 20), Criminal Procedure (1, 2, 10, 12, 15, 40, and 43), Evidence (101, 601, and 609), and Juvenile Procedure (1, 2, 8, 27, 34, 35, and 41) (As published for public comment (second round)), at *2 (https://www.supremecourt.ohio.gov/RuleAmendments/Default.aspx) (last visited 2/27/2023).

[11] *Id.* at *3.

7

the comments are reviewed by the Commission, which may withdraw, amend, or resubmit all or any provision of the proposed amendments to the Supreme Court for final consideration."[12]  The second period for public comment ended less than two weeks ago.  The undersigned has no way to know whether the Commission will choose to "withdraw, amend, or resubmit."  But assuming the Commission resubmits the 601(B)(5)(b) amendment, the Ohio Supreme Court has until April 30 to decide whether to accept it and file with the Ohio General Assembly.[13]  The General Assembly then has until June 30 "to issue a concurrent resolution of disapproval."[14]  If no such resolution is issued, then, and only then, does the proposed amendment become effective on July 1,[15] which is *five months hence*.

Third, and notably, as proposed the amendment is *not* retroactive.  Whether it becomes effective on July 1, then, is irrelevant to Plaintiff's dismissed malpractice claim.  Finally, in the Court's view, Plaintiff's claim accrued on July 30, 1998, the date of his labor and delivery.  Dr. Hollings wasn't yet in medical school then, much less in licensed and in active clinical practice.  (*See* Doc. 76-1 Hollings Curriculum Vitae PAGEID 1390).  Given this fact, Plaintiff's focus on August 12, 2016, while understandable, is misplaced.  As a minor, of course, he received the benefit of tolling the one-year statute of limitations[16] (for medical malpractice) until he turned 18 years old (the age of majority).  Ohio Rev. Code § 2305.16.  But this does not change when his claim *accrued*.  "[I]f a person entitled to bring an[ ] action [under Ohio Rev. Code § 2305.113(A)]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] Ohio Rev. Code § 2305.113(A).

. . . is, **at the time the cause of action accrues**, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed." *Id.* (emphasis added).

As noted, Rule 62.1 gives the undersigned the option to defer Plaintiff's Rule 60(b)(6) motion, deny it, or make an indicative ruling.  For the reasons just discussed, the Court will not make an indicative ruling.  Nor will the Court defer ruling.  Plaintiff did not argue in his appellate briefs[17] the issue of Dr. Hollings' competency but focused instead on the issue of spoliation; and the Sixth Circuit has denied[18] his recent request to reopen briefing for this purpose.  Thus, Plaintiff has not "placed the same issue in front of two courts at the same time" such that a deferred ruling is appropriate.  *See Adams*, 2022 WL 987337, at *2 (quotations and citations omitted).

One option remains.  The reasons that support the Court's decision to not make an indicative ruling also support denial of Plaintiff's Rule 60(b)(6) motion.  Accordingly, Plaintiff Jahmir C. Frank's Motion to Vacate (Doc. 110) the Court's September 3, 2021 Opinion and Order (Doc. 106) is hereby **DENIED**.

      **IT IS SO ORDERED.**

                                        /s/ *Michael R. Barrett*
                                        Michael R. Barrett, Judge
                                        United States District Court

---

[17] No. 21-3795 (ECF #8, #44); *see id.* (Civil Appeal Statement of Parties and Issues, ECF #6 ("**This appeal is from the district court decision that denied Appellant's motion for an adverse inference jury instruction on the issue of liability in a medical malpractice action** against Appellee Good Samaritan Hospital where the Appellee hospital negligently destroyed Appellant's medical records.  The appeal is taken against the hospital and physicians.") (emphasis added)).

[18] *Id.* (ECF #52).